FILED
At Albuquerque, NM
FEB 12 2025
MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>**NEILL ELSMAN,**<br><br>Defendant. | ) | CRIMINAL NO. 25-259 MLG<br><br>Count 1: 18 U.S.C. § 1951(a): Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right;<br><br>Count 2: 18 U.S.C. § 1951(a): Interference with Commerce by Extortion Under Color of Official Right; and<br><br>Counts 3 - 5: 18 U.S.C. § 666(a)(1)(B): Receiving a Bribe as an Agent of an Organization Receiving Federal Funds. |

# INFORMATION

The United States Attorney charges:

## Introduction

At all times relevant to this Information:

### New Mexico Driving While Intoxicated (DWI) Laws

1. New Mexico has a series of state laws designed to target the unlawful driving of vehicles while under the influence of alcohol or drugs. *See* New Mexico Statutes Annotated (NMSA) 1978, § 66-8-101, *et seq.* (2016). Under New Mexico state law, a person has committed DWI if they operated a vehicle while impaired to the slightest degree, *see* NMSA 1978, § 66-8-102(A) (2016), or with a blood alcohol concentration (BAC) greater than .08, *see* NMSA 1978, § 66-8-102(C). A person has committed aggravated DWI if (1) their BAC is .16 or greater, (2) they caused injury as a result of their unlawful operation of a motor vehicle, or (3) they refused

to submit to blood or breath testing. *See* NMSA 1978, §§ 66-8-102(D), 66-8-107(A).

(Collectively, these are referred to as DWI Offenders.)

2.      DWI offenses that do not involve injury or death to another are generally

misdemeanors, unless the offender has at least three prior DWI convictions (resulting in the next

DWI arrest being a state felony). *See* NMSA 1978 at § 66-8-102(F)-(K). The range of

imprisonment depends on an offender's prior DWI conviction history, but all DWI convictions

require payment of associated court fees in addition to potential fines. Additionally, if a person is

convicted of DWI, they must have an ignition interlock installed in their vehicle (or in any

vehicle driven by them).

3.      To initiate a state court misdemeanor DWI offense, the arresting officer either

files a criminal complaint immediately following the arrest and takes the offender into custody,

*see* New Mexico State Court Rules (NMRA) 7-201, or later files a criminal complaint but seeks

a summons from the state court, *see id.*, *see also* NMRA 7-204. If the DWI Offender is

hospitalized or otherwise unable to be taken into custody immediately following the DWI

incident, the officer may later file the criminal complaint and seek a summons from the court.

4.      Prior to March 2022, once the New Mexico state criminal DWI charges were

initiated, all parties, including a defendant, were entitled to conduct a pretrial interview (PTI) of

all witnesses, including law enforcement officers. *See* NMRA 7-504(1). To arrange the PTI, the

parties were required to confer and agree in good faith to arrange a date and location for the PTI.

If that was unsuccessful, defense counsel could seek a subpoena from the state court for a PTI.

Typically, the initial PTI would be arranged at the law enforcement office and, if the officer did

not attend, defense counsel could request a subpoena for the PTI at another location, including

the defense attorney's law firm. On March 24, 2022, the New Mexico State Supreme Court

entered an order temporarily suspending all PTIs in cases occurring in the Bernalillo County

Metropolitan Court, which included all misdemeanor DWI arrests in Bernalillo County. *See* New Mexico Supreme Court Order NO. 22-8500-016. Because of this, since March 2022, there have not been PTIs for misdemeanor DWI cases that occur in Bernalillo County.

New Mexico Motor Vehicle Division (MVD) Administrative Proceedings

5. For DWI Offenders with New Mexico driver's licenses, in addition to the criminal case, there is a separate administrative process handled by the New Mexico MVD to determine if the DWI Offender's driver's license should be revoked (the "MVD hearing"). *See* NMSA 1978, § 66-8-111. Under New Mexico state law, the officer must immediately provide the DWI Offender written notice of revocation of the DWI Offender's driver's license and of the right to an administrative hearing. *See id.* at § 66-8-111.1(A). This written notice serves as the offender's temporary license for twenty days or, if the DWI Offender requests an administrative hearing, until after the order is entered following that hearing. *See id.* at § 66-8-111.1(B). If the DWI Offender requests a hearing, an administrative hearing is held, at which the officer must appear and provide testimony that there were "reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drugs", the DWI Offender was arrested, and the results of the blood or breath test (or refusal). *See id.* at § 66-8-112(F). If the officer does so, the MVD then suspends the DWI Offender's driver's license.

New Mexico DWI Law Enforcement

6. Multiple policing agencies share in the enforcement of DWI laws within and around the Albuquerque area including, but not limited to, the Albuquerque Police Department (APD), the New Mexico State Police (NMSP), and the Bernalillo County Sheriff's Office (BCSO). Each agency has its own internal guidelines related to officer and deputy conduct and behavior.

7. APD has a Personnel Code of Conduct that requires all officers to "act in a manner that is above reproach. This includes avoiding behavior that may cast doubt on their integrity, honesty, moral judgment, or character; that tends to bring discredit to the Department; or that impairs the Department's efficient and effective operation." APD Standard Operating Procedure 1-1-6(A)(1).

The Defendant

8. At all times material to this Information, defendant **NEILL ELSMAN** was a sworn law enforcement officer with APD. **ELSMAN** joined APD and became a sworn law enforcement officer in 2014. **ELSMAN** was assigned to work in the DWI unit on September 28, 2019.

Count 1

Conspiracy to Interfere with Commerce by Extortion Under Color of Official Right

9. The allegations set forth in paragraphs 1 through 8 of this Information are realleged and incorporated herein by reference.

10. From on or about August 29, 2021, through on or about January 18, 2024, in Bernalillo County, in the District of New Mexico, the defendant, **NEILL ELSMAN**, unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed, and acted interdependently with other persons to commit an offense defined in 18 U.S.C. § 1951(a), specifically interference with commerce by extortion under color of official right.

The Object of the Conspiracy

11. The object of the conspiracy was for **ELSMAN** and other sworn law enforcement officers (the "Conspiring Officers") to agree to act, or to fail to act, to ensure DWI Offenders that they arrested for DWI and who retained co-conspirator 1 avoided criminal and administrative

remedies related to their DWI arrests in exchange for items of value provided by co-conspirator 1 in coordination with RICARDO MENDEZ.

Manner and Means of the Extortion Conspiracy

12. The object of the conspiracy was accomplished as follows:

a. Co-conspirator 1, a lawyer, owned a criminal defense law firm located in Albuquerque, New Mexico, that specialized in DWI defense. Co-conspirator 1 appeared at the criminal and administrative settings for cases that were part of the scheme and moved to dismiss the proceedings based on the Conspiring Officers' intentional failures to appear at required settings.

b. MENDEZ worked for co-conspirator 1's law firm as an investigator and handled the day-to-day coordination of the scheme.

c. **ELSMAN** was a Conspiring Officer and participated in the extortion conspiracy by agreeing to intentionally fail to appear at required criminal and administrative settings associated with the DWI-related arrest knowing that his non-appearance would allow co-conspirator 1 to move to dismiss the proceedings.

d. To execute the scheme, the co-conspirators developed a system to coordinate the scheduling of the MVD hearing and criminal settings for DWI Offenders who retained co-conspirator 1 to ensure that the Conspiring Officers, including **ELSMAN**, would be able to miss the required settings, which, in turn, allowed co-conspirator 1 to use the Conspiring Officer's failure to appear as a basis to request dismissal of the proceeding (even though co-conspirator 1 was aware that the Conspiring Officer had been paid by co-conspirator 1 and MENDEZ to not appear).

e. The DWI Offenders, both aware and unaware of the scheme, retained co-conspirator 1 as their attorney following their DWI arrests. Co-conspirator 1 and/or MENDEZ

consulted with the DWI Offender and strongly encouraged that the attorney retainer fee be paid in cash. When the DWI Offender paid the cash retainer, co-conspirator 1 and MENDEZ were paid cash in addition to their law firm salary. In addition, the Conspiring Officers, including **ELSMAN**, were often paid in cash close in time to the date of a DWI Offender's arrest but, at times, also received other benefits and things of value, including but not limited to free legal services, gift cards, hotel rooms, and other gifts. MENDEZ typically handled communications with the Conspiring Officers to negotiate payment amounts and to arrange meetings to exchange payments. However, on occasion, co-conspirator 1 paid the conspiring officers directly.

        f.      In terms of the payment amount that **ELSMAN** and other Conspiring Officers received, there was generally a set amount, but there were also exceptions depending on various factors, including the circumstances of the DWI arrest, the DWI Offender's criminal history (specifically if the offender was facing felony DWI charges based on their prior DWI convictions), the amount of money the DWI Offender appeared to have, and the DWI Offender's personal relationship to the co-conspirators.

        g.      Once the DWI Offender retained co-conspirator 1, co-conspirator 1, MENDEZ, and the Conspiring Officer, including **ELSMAN**, would coordinate the Conspiring Officer's non-appearance at required settings on the state criminal case and the MVD administrative proceeding. When the Conspiring Officer failed to appear as arranged, co-conspirator 1 moved to dismiss the criminal case and the MVD proceeding. Because the Conspiring Officer was a necessary witness and did not appear as required, the case and proceeding would be dismissed. Because the state criminal charges were dismissed, the fines, fees, and interlock requirement that would otherwise have applied to the DWI conviction were not imposed. In addition, the DWI Offender's driver's license was not revoked, allowing the DWI Offender to continue to drive without restriction.

h.     As to state criminal cases prior to March 2022, co-conspirator 1, MENDEZ, and the Conspiring Officers, including **ELSMAN**, agreed that the Conspiring Officers would not appear at the PTIs (either the initial PTI at the law enforcement office or the subpoenaed PTI). Before March 2022, an officer missing a PTI, or multiple PTIs, typically guaranteed the dismissal of a DWI case because, once requested by a defendant, officer PTIs became a required part of state court discovery. Dismissal of the state criminal case often occurred as a sanction for the State's discovery violation.

i.     The suspension of PTIs in misdemeanor DWI cases in March 2022 altered how co-conspirator 1, MENDEZ, and the Conspiring Officers, including **ELSMAN**, worked to guarantee dismissal of state criminal DWI-related offenses. No longer able to manipulate appearances at PTIs, co-conspirator 1, MENDEZ, and the Conspiring Officers agreed that the Conspiring Officers would not appear at the criminal DWI motion hearings or trial settings. When the Conspiring Officers failed to appear at court, co-conspirator 1 moved to dismiss the case because a necessary witness for the state would not be present.

j.     As the scheme evolved over the years, several Conspiring Officers, including **ELSMAN**, began referring case to co-conspirator 1 and MENDEZ. Conspiring Officers retained MVD paperwork and driver's licenses and then provided them to MENDEZ. Conspiring Officers also provided MENDEZ the DWI Offender's phone number, if obtained as part of the DWI incident. Typically, MENDEZ would reach out to the DWI Offender referred by the Conspiring Officer and alert the DWI Offender that MENDEZ knew about the DWI arrest (even though often this was before any documentation about the arrest was publicly available). MENDEZ arranged a time for the DWI Offender to meet with co-conspirator 1 and/or MENDEZ, typically at co-conspirator 1's law firm. Co-conspirator 1 and/or MENDEZ showed the DWI Offender their driver's license (which had been seized in connection to the DWI arrest).

Co-conspirator 1 and/or MENDEZ would then inform the DWI Offender that, if they hired co-conspirator 1 as their attorney, they would not have to worry about the DWI arrest. At times, co-conspirator 1 and/or MENDEZ would guarantee that the DWI criminal case and MVD process would be dismissed. If the DWI Offender did not retain co-conspirator 1 as their lawyer, the Conspiring Officer typically proceeded with the DWI case as required, thereby usually securing a DWI conviction against the DWI Offender.

k. To ensure that APD DWI officers were able to keep participating in the scheme over the years, other APD Conspiring Officers who had worked in the DWI unit and were part of the scheme helped recruit and train the next generation of Conspiring Officers. The more senior APD Conspiring Officers helped recruit officers to join the conspiracy, frequently personally introduced them to MENDEZ, and often assured the recruited officer about the success of the criminal scheme. More senior APD Conspiring Officers also provided MENDEZ the personal cell phone numbers for the recruits, which allowed MENDEZ direct access to the newly recruited officers. In addition, more senior APD Conspiring Officers told MENDEZ which officers should not be recruited to join the conspiracy (meaning which officers were likely to report the conspiracy's criminal activity to internal affairs or other law enforcement authorities). In recent years, at times Conspiring Officers were paid a "referral fee" from MENDEZ and co-conspirator 1 as payment for having recruited another officer to join the conspiracy.

l. When MENDEZ met with the recruits to bring them into the conspiracy, MENDEZ often discussed many of the other Conspiring Officers, including **ELSMAN**, who had been and were part of the conspiracy from the different law enforcement agencies (APD, NMSP, and BCSO). This allowed the recruit to feel more comfortable joining the conspiracy because of the number of senior, and often high-ranking, officers who were also co-conspirators. This

generational participation, particularly within APD, allowed the conspiracy to take root amongst almost the entire APD DWI unit over a lengthy period of time. The more senior APD Conspiring Officers were also asked by MENDEZ, co-conspirator 1, and/or other Conspiring Officers to use their positions and influence within APD to try to ensure that the Conspiring Officers were not investigated or disciplined in connection with their illegal activity.

m. Conspiring Officers would also sometimes discuss with each other the continued success of the conspiracy to ensure that it remained successful and undiscovered, thereby allowing the criminal scheme to continue undetected.

n. Co-conspirators' conduct in perpetuating the conspiracy affected commerce.

o. Co-conspirators frequently used coded language in their communications to avoid detection and criminal prosecution.

In violation of 18 U.S.C. § 1951(a)

Interference with Commerce by Extortion Under Color of Official Right

Count 2

13. The allegations set forth in paragraphs 1 through 12 of this Information are realleged and incorporated herein by reference.

14. In April 2022, **NEILL ELSMAN,** a sworn law enforcement officer with APD, arrested D.A. and charged them by criminal complaint with DWI. D.A. hired co-conspirator 1 to represent them in their DWI case. After D.A. hired co-conspirator 1, **ELSMAN** agreed to accept and accepted property in concert with co-conspirator 1 and MENDEZ to which **ELSMAN** was not due in his role as a sworn law enforcement officer.

15. The property **ELSMAN** agreed to accept and accepted was given to him in exchange for his agreement to act, or to fail to act, in such a way that D.A. would avoid criminal and administrative consequences related to their DWI arrest.

16. D.A. gave the property with consent.

17. All charges related to D.A.'s DWI case were dismissed in December 2022.

18. From on or about April 23, 2022, to on or about December 9, 2022, in Bernalillo County, in the District of New Mexico, the defendant, **NEILL ELSMAN**, knowingly attempted to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in such commerce by extortion, in that the defendant attempted to obtain property consisting of U.S. currency not due **ELSMAN** or his office from D.A. with D.A.'s consent, under color of official right.

In violation of 18 U.S.C. § 1951(a).

Counts 3 - 5

Bribery

19. The allegations set forth in paragraphs 1 through 19 of this Information are realleged and incorporated herein by reference.

20. At all times material this Information, APD was a local government agency of the City of Albuquerque, a local government located within the District of New Mexico.

21. APD received benefits of more than $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, and insurance during the following one-year periods:

a. February 15, 2021, through February 14, 2022;

b. February 15, 2022, through February 14, 2023; and

c. February 15, 2023, through February 14, 2024.

22. At all times material to this Information, **NEILL ELSMAN** was employed as sworn law enforcement officer with APD and assigned to the DWI unit. As a sworn law enforcement officer with APD, **ELSMAN** was an agent of APD.

23. As a sworn law enforcement officer with APD, **ELSMAN** was required to "act in a manner that is above reproach." In his role as a sworn law enforcement officer assigned to APD's DWI Unit, **ELSMAN**'s duties included, among other things, cooperating fully in all aspects of the judicial process, including appearing at court hearings, pretrial interviews and MVD hearings.

Count 3

24. The allegations set forth in paragraphs 1 through 22 of this Information are realleged and incorporated herein by reference.

25. Between February 15, 2021, and February 14, 2022, **NEILL ELSMAN** received and accepted U.S. currency payments and things of value from co-conspirator 1 and RICARDO MENDEZ related to DWI cases for at least one DWI Offender in a series of transactions involving in excess of $5,000.

26. From in or about February 2021 to in or about January 2022, in Bernalillo County, in the District of New Mexico, the defendant, **NEILL ELSMAN**, corruptly solicited, demanded, accepted, and agreed to accept a thing of value from a person with the intent to be influenced and rewarded in connection with a transaction and series of transactions involving $5,000 or more.

In violation of 18 U.S.C. § 666(a)(1)(B).

Count 4

27. The allegations set forth in paragraphs 1 through 26, of this Information are realleged and incorporated herein by reference.

28. Between February 15, 2022, and February 14, 2023, **NEILL ELSMAN** received and accepted U.S. currency payments and things of value from co-conspirator 1 and RICARDO MENDEZ related to DWI cases for at least four DWI Offenders in a series of transactions involving in excess of $5,000.

29. From in or about February 2022 to in or about January 2023, in Bernalillo County, in the District of New Mexico, the defendant, **NEILL ELSMAN**, corruptly solicited, demanded, accepted, and agreed to accept a thing of value from a person with the intent to be influenced and rewarded in connection with a transaction and series of transactions involving $5,000 or more.

In violation of 18 U.S.C. § 666(a)(1)(B).

Count 5

30. The allegations set forth in paragraphs 1 through 29, of this Information are realleged and incorporated herein by reference.

31. Between February 15, 2023, and January 18, 2024, **NEILL ELSMAN** received and accepted U.S. currency payments and things of value from co-conspirator 1 and RICARDO MENDEZ related to DWI cases pending in court for at least one DWI Offender in a series of transactions involving in excess of $5,000.

32. From in or about February 2023 to in or about January 2024, in Bernalillo County, in the District of New Mexico, the defendant, **NEILL ELSMAN**, corruptly solicited, demanded, accepted, and agreed to accept a thing of value from a person with the intent to be

influenced and rewarded in connection with a transaction and series of transactions involving $5,000 or more.

In violation 18 U.S.C. § 666(a)(1)(B).

ALEXANDER M.M. UBALLEZ
United States Attorney


SHANA B. LONG
KATHERINE L. LEWIS
Assistant United States Attorneys
201 Third Street, Suite 900
Albuquerque, New Mexico  87103
(505) 346-7274